UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REVA INTERNATIONAL, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MBRAUN, INC., a corporation; PETER M. ) <br> CALANDRA, JR., an individual; M.BRAUN ) <br> INERTGAS-SYSTEME GMBH, a German ) <br> corporation; DOES 1-10; BLACK ) <br> CORPORATIONS 1-10, ) <br> ) <br> Defendants. ) <br> ) | 03:06-CV-00306-LRH-VPC <br><br> ORDER |

Presently before the court is a Motion for Partial Summary Judgment (# 16[1]) filed by defendants, MBraun, Inc. ("U.S. MBraun"), MBraun Intergas-Systeme GmbH ("German Mbraun"), and Peter Calandra, Jr. ("Calandra") (collectively, "Defendants"). Plaintiff, Reva International, Ltd. ("Reva"), has filed an opposition (# 19), and Defendants replied (# 21).

**I. Factual Background**

This is a diversity action arising from the alleged breach of a contract. Only a brief recitation of the facts is necessary for purposes of this motion. Reva is a Nevada corporation that manufactures and sells hand-held lighting systems. In March, 2005, Reva purchased a "glovebox"

---

[1] Refers to the court's docket number.

system from U.S. Mbraun. A "glovebox" system is a device used to assemble parts for, among other things, light-bulb manufacturing. A high temperature oven is attached to the glovebox and used to bake quartz tubes for the manufacture of bulbs or lamps. U.S MBraun is a subsidiary of German MBraun.

According to the complaint, Reva initially contacted Defendants in October, 2004, and indicated that Reva wanted to enter into the high-intensity discharge bulb manufacturing business in conjunction with manufacturing hand-held lighting systems. In this action, Reva alleges that it was never informed that the oven Defendants were selling was being manufactured by U.S. MBraun as opposed to German MBraun. Reva further alleges that it was never informed that the oven sold to Reva was not the "standard" oven manufactured by German MBraun. According to Reva, the oven it actually received was of a lesser quality then the oven that it agreed to purchase.

As a result of the alleged low quality glovebox system that was delivered to Reva, Reva filed this action in state court asserting the following claims for relief: breach of contract, conversion, misrepresentation/fraud, breach of covenant of good faith and fair dealing, deceptive trade practice, breach of the uniform commercial code, racketeering, interference with contracts, interference with prospective economic advantage, prima facie tort, outrage, and conspiracy. Defendants deny all allegations of wrongdoing and removed the action to this court on May 30, 2006.

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne*

*v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

In seeking partial summary judgment, Defendants acknowledge there is a genuine issue of material fact with respect to the breach of contract claim against U.S. MBraun. However, Defendants argue that summary judgment should be granted with respect to the following claims

3

for relief: breach of contract and "uniform commercial code" against Calandra and German MBraun, conversion, breach of the covenant of good faith and fair dealing, deceptive trade practice, racketeering, interference with contracts, interference with prospective economic advantage, prima facie tort, outrage, and on Reva's claimed damages for lost profits.  The court will separately address each part of the motion.

**A.  Breach of Contract and "Uniform Commercial Code"**

Reva's first and sixth claims for relief are based on breach of contract and "uniform commercial code."  Defendants argue that summary judgment should be granted with respect to Calandra and German MBraun because neither party had a contract with Reva.  Reva argues that summary judgment is not appropriate because U.S. MBraun represented to Reva that Reva was contracting with German MBraun.

Looking at the evidence in the light most favorable to Reva, as this court must, there are genuine issues of material fact that preclude summary judgment.  As an initial matter, the court finds that Defendants have failed to meet their initial moving burden.  To support the argument that neither Calandra nor German MBraun were part of the contract, Defendants point to paragraph thirteen of the complaint, which reads, "[o]n or about March 18, 2005, . . . Reva entered into an agreement with US MBraun for purchase of certain high technology equipment, commonly called a Glovebox System, for manufacturing light bulbs." (Pet. for Removal, Compl. ¶ 13, Ex. 1.)  In addition, Defendants point to a U.S. MBraun quotation for the glovebox system.  The quotation appears on paper that contains a U.S. MBraun header and was sent through e-mail by a U.S. MBraun employee. (Mot. for Partial Summ. J. (# 16), December 17, 2004, e-mail, Ex. 10.)

Although paragraph thirteen of the complaint does refer to a contract with U.S. MBraun, paragraph thirty-two of the complaint, located within the section setting forth a claim for breach of contract, refers to a breach of the agreement by all Defendants. (Pet. for Removal, Compl. ¶ 32, Ex. 1.)  Moreover, the fact that U.S. MBraun supplied a quotation for the purchase of the system

4

does not establish that neither German MBraun nor Calandra were party to the contract. The quotation merely sets forth the items to be included with the glovebox system, the unit price and extension of each item, and the total price of the glovebox system. (Mot. for Partial Summ. J. (# 16), December 17, 2004, e-mail, Ex. 10.) Thus, no evidence has been provided to the court indicating who the contracting parties are. As such, summary judgment is not appropriate.

Furthermore, although it is not clear, it appears as though Reva might be attempting to establish liability on behalf of German MBraun on a theory of apparent authority. Reva has provided evidence indicating that U.S. MBraun indicated to Reva that Reva was contracting with German MBraun. (Pl.'s Errata to Opp'n (# 20), Decl. of Markus Frick, Ex. 1 ¶ 5.) Reva has also provided evidence indicating that "German MBraun, US MBraun, and Peter Calandra at all time represented that Reva would be purchasing a glovebox system from German MBraun and manufactured by German MBraun, was contracting with German MBraun, and US MBraun was only preparing the equipment." *Id*. ¶ 8. Thus, there are genuine issues of material fact relating to whether German MBraun and Calandra entered into a contract with Reva and/or, assuming Reva is relying on an agency theory, whether U.S. MBraum had apparent authority to bind German MBraun. Summary judgment will be denied with respect to Reva's first and sixth claims for relief.

**B. Conversion**

Reva's second claim for relief is conversion. Defendants argue that there are no allegations in this case that would support a claim for conversion. Reva opposes the motion arguing that it suffered a severe interference with the control of its personal property in an amount equal to the purchase price it paid for the alleged non-conforming glovebox system. According to Reva, "[b]y accepting purchase monies for a non-conforming oven and Glovebox system, Defendants wrongfully took/converted over $600,000 from Plaintiff, resulting in a severe and major interference with Plaintiff's control over its personal property." (Pl.'s Opp'n to Defs.' Mot. for Partial Summ. J. (# 19) at 5.)

"Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights. *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006). "Yet, conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Id.*

Looking at the evidence in the light most favorable to Reva, summary judgment is appropriate as there is no genuine issue of material fact. There is no evidence that Defendants wrongfully exerted dominion over Reva's property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights. As Reva acknowledges, it voluntarily paid Defendants for the glovebox system as issue in this case. Thus, Defendants only exerted dominion over money that was voluntarily paid pursuant to a purchase agreement. Even assuming Reva is correct that the glovebox system was inferior to the one it agreed to purchase, no conversion occurred. To the extent the glovebox system may be non-conforming, Reva has a contract remedy.

**C.  Breach of the Covenant of Good Faith and Fair Dealing**

Reva's fourth claim for relief is breach of the implied covenant of good faith and faith dealing. Defendants argue that summary judgment must be granted on any tort claim for breach of the implied covenant because there is no special relationship between Defendants and Reva. With respect to any contractual claim for breach of the implied covenant, Defendants argue that summary judgment is appropriate with regards to German MBraun and Calandra because they were not party to the contract. Finally, Defendants argue that any contractual claim against U.S. MBraun is subsumed under Reva's breach of contract claim. As to the tort claim, Reva argues that summary judgment is not appropriate because Defendants had vastly superior bargaining power. Furthermore, Reva argues that summary judgment is not appropriate on the contract claim because it has provided evidence of a contractual relationship with German MBraun and Calandra.

In Nevada, every contract contains an implied covenant of good faith and fair dealing. *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006). "[A]n action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor." *Id*. (quoting *K Mart Corp. v. Ponsock*, 732 P.2d 1364, 1370 (Nev. 1987)). "A special relationship is 'characterized by elements of public interest, adhesion, and fiduciary responsibility.'" *Id*. (quoting *Great Am. Ins. v. General Builders*, 934 P.2d 257, 263 (Nev. 1997)). The tort remedy is also availably in certain situations where one party holds vastly superior bargaining power. *Id*. (citing *Aluevich v. Harrah's*, 660 P.2d 986, 217-18 (Nev. 1983)).

As support for its argument that Defendants have vastly superior bargaining power, Reva points to the deposition testimony of two of its employees, Markus Frick and Tillman Frick.[2] According to this testimony, Reva employees informed Defendants that they were "neophytes in lamp-making and [needed] a turkey system that [ran] from start to finish." (Pl.'s Errata to Opp'n (# 20), Dep. of Markus Frick, Ex. 3 at 87:22-25); (Pl.'s Errata to Opp'n (# 20), Dep. of Tillman Frick, Ex. 4 at 11:10-14.) Reva further informed Defendants that they were looking to Defendants to provide expertise. (Pl.'s Errata to Opp'n (# 20), Dep. of Markus Frick, Ex. 3 at 88:2-4.)

Defendants argue that Reva's assertions that Defendants have vastly superior bargaining power are hollow because the facts show Reva hired a lamp-making expert as an employee. The evidence indicates that Reva did, in fact, hire an expert, Dr. Dale Brabham, to develop low-wattage lamps. (Mot. for Partial Summ. J. (# 16), Dep. of Dale Brabham, Ex. 3 at 14:9-15:2.) Dr. Dale

---

[2]The deposition excerpts provided by Reva have not been properly authenticated. "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). The excerpts provided by Reva do not contain the names of the deponent, other than as a running header on the upper right hand corner, nor does it include the action or the reporter's certification. The court admonishes counsel for all parties that the failure to properly authenticate evidence could lead to the exclusion of such evidence by the court.

1 Brabham was employed with Reva from May, 2005, to May, 2006. *Id*. at 14:9-11. However, the
2 evidence further indicates that Reva purchased the glovebox system on March 17, 2005. (Mot. for
3 Partial Summ. J. (# 16), Dep. of Markus Frick, Ex. 1 at 189:19-22.) Thus, the fact that Reva may
4 have hired a lighting expert does not affect the bargaining power of the parties for purposes of this
5 action because Dr. Dale Brabham was not hired until after the glovebox system was purchased.

6 Based on the record provided to the court, there is a genuine issue of material fact relating
7 to the relative bargaining power of the parties. Although the evidence is marginal, Reva has
8 indicated that it was new to the lamp making business and was relying on Defendants' expertise.
9 Furthermore, there is evidence that German MBraun is a world leader in the production of
10 gloveboxes. (Mot. for Partial Summ. J. (# 16), Decl. of Peter Calandra Jr., Ex. 26 ¶ 5.) There is
11 also evidence that allows an inference that Reva is a relatively small company. During a meeting
12 between Reva and U.S. MBraun, Reva indicated that they wanted the capability of producing 2,000
13 to 3,000 bulbs per year. (Mot. for Partial Summ. J. (# 16), Decl. of Peter Calandra Jr., Ex. 1 at
14 86:6-10.) For these reasons, summary judgment is inappropriate.

15 With respect to the contract claim, there are also genuine issues of material fact. As the
16 court previously addressed in part III(A), there are issues of fact regarding the parties to the contract
17 for the glovebox system. Furthermore, Defendants have provided no authority for the proposition
18 that the claim is surplusage or subsumed by the breach of contract claim. Whether such a claim is
19 included as part of a breach of contract claim or stated separately, the claim remains viable in this
20 action and summary judgment will be denied.

21 **D.  Deceptive Trade Practice**

22 Reva's fifth claim for relief alleges a deceptive trade practice in violation of chapter 598 of
23 the Nevada Revised Statutes. Defendants argue that summary judgment is appropriate on this
24 claim because Reva is not a consumer. Reva opposes the motion arguing that it is the victim of a
25 deceptive trade practice and has a viable cause of action.

26

Chapter 598 of the Nevada Revised Statutes provides for a public cause of action for deceptive trade practices. *Nevada Power Co. v. Eighth Judicial Dist. Court of Nevada ex rel County of Clark*, 102 P.3d 578, 583 n.7 (Nev 2004). However, section 41.600 provides for a private cause of action by a person who is a victim of consumer fraud. *Id*. Consumer fraud is defined, in part, as a deceptive trade practice as defined in section 598.0915 to 598.0925 of the Nevada Revised Statutes. Nev. Rev. Stat. § 41.600.

In seeking summary judgment, Defendants rely, in part, on *Rebel Oil Co. v. Atlantic Richfield Co.*, 828 F.Supp. 794, 979-98 (D. Nev. 1991). In *Rebel Oil Co.*, gasoline retailers brought a deceptive trade practices claim against a competitor alleging that the competitor made false statements regarding gasahol. 828 F.Supp. at 795-96. In analyzing the viability of this claim, the district court stated that it was "not persuaded that competitors are 'victims' within the meaning of section 41.600." *Id*. at 797. The case at bar is distinguishable from *Rebel Oil Co.* because there are no allegations that Reva is a competitor of any of the Defendants. Rather, Reva purchased a product from one or all of defendants.

Defendants next rely on the definition of "consumer" contained in section 690C.030 of the Nevada Revised Statutes. Chapter 690C of the Nevada Revised Statutes concerns service contracts. Section 690C.030 defines "consumer" as "a person who purchases, other than for resale, goods used primarily for personal, family or household purposes and not for business or research purposes." Nev. Rev. Stat. § 690C.030. Defendants argue that the term consumer in section 41.600 should have the same meaning.

Defendants' argument fails under the plain language of section 41.600. Section 41.600 explicitly defines the term "consumer fraud" as, among other things, "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925." Nev. Rev. Stat. § 41.600. Section 598.0915 to 598.0925 define when such a deceptive trade practice occurs. Thus, consumer fraud occurs when such a deceptive trade practice occurs. At this time, it is unclear what deceptive trade practices

were allegedly committed by Defendants. Nevertheless, there is no indication that, as a general matter, a corporation can't be the victim a deceptive trade practice and recover damages pursuant to Section 41.600. Furthermore, the parties have not addressed whether there is any evidence to support such a claim. Summary judgment will be denied.

**E. Racketeering**

Reva's seventh claim for relief alleges that Defendants' conduct constitutes racketeering within the meaning of Nevada Revised Statutes sections 207.350-207.520. Defendants seek summary judgment arguing that Reva alleges only one crime that could be considered "related to racketeering." Reva, on the other hand, argues that it has alleged that Defendants engaged in two instances of obtaining possession of money or property by means of false pretenses in violation of section 207.36(26). The two instances consist of 1) the purchase and sale of the glovebox system, and 2) the installation of the glovebox system. Thus, Reva argues summary judgment should be denied.

Section 207.470 provides, in pertinent part, "[a]ny person who is injured in his business or property by reason of any violation of NRS 207.400 has a cause of action against a person causing such injury for three times the actual damages sustained.[3]" Nev. Rev. Stat. § 207.470. Pursuant to sections 207.470 and 207.400, a civil cause of action may be based upon allegations and proof that a defendant

> engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

Nev. Rev. Stat. § 270.390; *Hale v. Burkhardt*, 764 P.2d 866, 867 (Nev. 1988). The phrase "crimes related to racketeering" is defined by section 207.360. Section 207.360(26) includes within the

---

[3]The parties have not addressed the issue of whether a "person" within the meaning of section 207.400 can include a corporation.

10

definition "the commission of, attempt to commit or conspiracy to commit" the crime of "[o]btaining possession of money or property valued at $250 or more, or obtaining a signature by means of false pretenses." Nev. Rev. Stat. § 207.360(26). The crime of obtaining something of value by false pretenses involves the following elements: 1) intent to defraud; 2) a false representation; 3) reliance on the false representation; and 4) that the victim be defrauded. *Hale v. Burkhardt*, 764 P.2d 866, 870 (Nev. 1988) (citing *Bright v. Sheriff of Washoe County*, 521 P.2d 371 (1974)).

In arguing that Defendants engaged in at least two crimes related to racketeering, Reva points to the allegations of the Complaint. Specifically, paragraph twenty-five of the Complaint alleges that "[t]here were at least (2) separate transactions and agreements ((a) purchase and sale and (b) installation) which were the product of misrepresentations and fraud by Defendants." (Pet. for Removal, Compl., Ex. 1 ¶ 25.)

Defendants, in its points and authority in reply to Reva's opposition, argue that the purchase, sale, and installation of the glovebox system were all part of one transaction and agreement. In support of this argument, Defendants point to the U.S. MBraun quotation. The quotation explicitly includes the cost of installation as follows: "installation rate - $200 per hour work time, $75 per hour travel time, plus travel & living cost. Note Amount not included in total cost." (Mot. for Partial Summ. J. (# 16), December 17, 2004, e-mail, Ex. 10.)

To the extent Defendants may have committed the crime of obtaining something of value by false pretenses, the undisputed record before the court indicates that the purchase, sale, and installation of the glovebox system were part of the same transaction. Thus, there are no genuine issues of material fact and summary judgment is appropriate.[4]

///

---

[4] The court recognizes that the evidence of the quotation was not addressed until Defendants' reply points and authorities. Nevertheless, to the extent Reva had evidence that the purchase and sale was a separate transaction from the installation, Reva could have sought leave to file a sur-reply.

11

### F. Interference with Contracts

Reva's eighth claim for relief seeks damages for interference with contracts. An action for intentional interference with contractual relations requires a plaintiff to establish the following: 1) a valid and existing contract; 2) the defendant's knowledge of the contract; 3) intentional acts intended or designed to disrupt the contractual relationship; 4) actual disruption of the contract; and 5) resulting damage. *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Defendants argue that summary judgment is appropriate because no defendant knew of any contract nor did they have any intent or design to interfere with any of Reva's contracts. Reva opposes the motion arguing that there are genuine issues of material fact that preclude summary judgment.

As support for its assertion that none of the defendants had knowledge of a contract or intended to interfere with any contract, Defendants point to the declaration of Calandra. Pursuant to the declaration, Calandra asserts that he has personal knowledge that none of the defendants knew of any contracts or intended to interfere with such a contract. *See* (Mot. for Partial Summ. J. (# 16), Decl. of Peter Calandra, Ex. 16 ¶ 5.) Calandra is the President of U.S. MBraun. Thus, Calandra would be in a position to have personal knowledge as to where he or U.S. MBraun had any knowledge or intent. However, no foundation has been established that would indicate Calandra has personal knowledge with respect to whether German MBraun had knowledge or intent. Thus, Defendants have met their initial burden with respect to Calandra and U.S. MBraun, but have failed to meet this burden with respect to German MBraun.

In opposition to the motion, Reva cites to the declarations of Markus and Tillman Frick as evidence that Defendants had knowledge of Reva's contracts. Specifically, the declarations read, "German MBraun, US MBraun, and Peter Calandra also had knowledge that Reva would be using the Glovebox system and oven to fulfill contracts that Plaintiff had with the federal government." (Pl.'s Errata to Opp'n (# 20), Decl. of Markus Frick, Ex. 1 ¶ 11); (Pl.'s Errata to Opp'n (# 20),

Decl. of Tillman Frick, Ex. 2 ¶ 7.)  Nevertheless, these portions of the declarations are inadmissible as there is no indication that either declarant has personal knowledge regarding the knowledge of Defendants.  *See* Fed. R. Evid. 602.  The declarations contain no facts that either declarant informed any defendant of any contract or any other facts that would indicate Defendants had knowledge of a contract.  Without such a factual assertion or other evidence indicating personal knowledge, the conclusory assertion that Defendants had knowledge is insufficient to defeat summary judgment.  Thus, there are no genuine issues of material fact as to whether Calandra or U.S. MBraun had knowledge of a contract.  Summary judgment will be granted with respect to these two defendants.

In addition to arguing lack of knowledge and intent, defendants argue that they could not have interfered with any contracts because the glovebox system was used to do experimental work.  However, Reva has provided evidence indicating that it "was unable to use the Glovebox system and oven to produce lamps because employees were trying to produce lamps with the non-conforming equipment and an unproven process."  (Pl.'s Errata to Opp'n (# 20), Decl. of Markus Frick, Ex. 1 ¶ 12.)  Because Defendants have failed to meet their initial burden with respect to German MBraun as the evidence does not support Defendants' arguments, summary judgment will be denied with respect to this defendant.

**G.  Interference with Prospective Economic Advantage**

Reva's ninth claim for relief seeks damages for interference with a prospective economic advantage.  The elements required to establish liability of intentional interference with prospective economic advantage are as follows: 1) a prospective contractual relationship between the plaintiff and a third party; 2) knowledge by the defendant of the prospective relationship; 3) intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and 5) actual harm to the plaintiff as a result of the defendant's conduct."  *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221,

1225 (Nev. 1987)).

Defendants argue that summary judgment is appropriate for the same reasons asserted in preceding section. Reva argues it has presented sufficient evidence to preclude summary judgment.

The parties rely on the same evidence as in the preceding section with respect to the elements of knowledge and intent. Thus, the court need not repeat the discussion contained in part III(F). As discussed in that section, there is no genuine issue of material fact relating to whether U.S. MBraun and Calandra had knowledge of any contract. Furthermore, there is no evidence as to whether these Defendants had knowledge of any prospective contractual relationship. Thus, summary judgment will be granted with respect to U.S. MBraun and Calandra. Defendants, however, did not meet their initial burden of showing no genuine issue of material fact with respect to German MBraun. As such, summary judgment will be denied with respect to the claim against German MBraun.

**H.  Prima Facie Tort**

Defendants argue that Reva's tenth claim for relief, prima facie tort, is deficient as Nevada does not recognize such a cause of action. Reva acknowledges that there are no Nevada cases involving such a tort claim. Nevertheless, Reva argues that the claim is viable because there are no Nevada cases holding that such a claim does not exist.

The parties recognize that there is no indication that prima facie tort is a valid cause of action in Nevada. Furthermore, the court's independent research has not revealed any indication that the Nevada courts recognize such a cause of action. Because there are no Nevada cases involving this cause of action, the court finds that Nevada does not recognize a cause of action for prima facie tort. As such, summary judgment will be granted.

**I.  Outrage**

Reva's eleventh claim for relief is titled as follows: "Outrage; Punitive and/or Exemplary Damages." The Nevada Supreme Court has stated that the term outrage is a synonym for

intentional infliction of emotional distress.  *Falline v. GNLV Corp.*, 823 P.2d 888, 894 (Nev. 1991).  Defendants argue that Reva is a corporation and cannot suffer emotional distress.  Defendants further argue that there are no allegations that rise to the level of extreme and outrageous conduct.  Finally, Defendants argue that Nevada law does not provide an independent cause of action for punitive or exemplary damages.  Reva's position with respect to this claim is unclear.  Reva argues that there are no Nevada cases involving a claim of outrage.  Reva is incorrect.  *See*, *e.g., Falline*, 823 P.2d at 894; *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981).  Reva further argues that it has alleged conduct that supports a claim of outrage.  With respect to punitive damages, Reva argues that such a claim is based on causes of action sounding in tort.  Finally, Reva argues that the issue of whether conduct is extreme and outrageous is a question of fact for a jury.

In order to establish a claim for outrage or intentional infliction of emotional distress, as it is more commonly known, a plaintiff must show the following: 1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; 2) severe or extreme emotional distress; and 3) actual or proximate causation.  *Star*, 625 P.2d at 92 (citing *Cervantes v. J.C. Penney, Inc.*, 595 P.2d 975  (Cal. 1979)).

In this case, the court agrees with Defendants that a corporation cannot suffer severe or extreme emotional distress.  Even assuming that it could, Reva has failed to present any evidence of severe or extreme emotional distress.  Thus, summary judgment is appropriate on this claim.  Furthermore, the court finds no allegations in this case that amount to extreme and outrageous conduct and Reva has pointed to no specific allegations to support such a claim.  Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'"  *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).  This is not such a case.  Rather, this case involves ordinary tort

and breach of contract claims.  Summary judgment will be granted.[5]

### J. Reva's Claimed Damages for Lost Profits

Defendants argue that summary judgment is appropriate with respect to Reva's claim of damages based on its alleged lost profits.  Specifically, Defendants argue that there is no basis in fact for such a damages award in light of Reva's alleged strategic commitment of the MBraun equipment to new product development.

Looking at the evidence in the light most favorable to Reva, there are genuine issues of material fact relating to whether Reva suffered damages in the form of lost profits as a result of Defendants' conduct.  Reva has provided evidence indicating that it "was unable to use the Glovebox system and oven to produce lamps because employees were trying to produce lamps with the non-conforming equipment and an unproven process." (Pl.'s Errata to Opp'n (# 20), Decl. of Markus Frick, Ex. 1 ¶ 12).  Furthermore, Reva has provided deposition testimony indicating that it suffered $250,000 in lost profits due to the alleged non-conforming glovebox system." (Pl.'s Errata to Opp'n (# 20), Dep. of Markus Frick, Ex. 3 at 163:13-20.)

Although Defendants are correct that there is no documentary proof of Reva's alleged lost profits, the deposition testimony provided, although marginal, is sufficient to survive a motion for summary judgment.  To the extent Defendants are claiming discovery violations, the Federal Rules of Civil Procedure provide for appropriate remedies.  Because the only issue raised by Defendants relates to whether Reva used the glovebox system for new product development, summary judgment will be denied.

///

///

///

---

[5] To the extent any of the remaining claims may support a punitive damages award, the court is not foreclosing the possibility of such an award by granting summary judgment on Reva's eleventh claim for relief.

1   IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment (#
2   16) is hereby GRANTED in part and DENIED in part as set forth in this order.
3   IT IS FURTHER ORDERED that the parties shall have thirty (30) days from the date of
4   this order within which to lodge with the court a proposed written joint pretrial order.
5   IT IS SO ORDERED.
6   DATED this 27th day of December, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE